UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEIHAN WANG, | CASE NO. 2:23-cv-01434-LK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE |
| v. | |
| UNITED HEALTHCARE OF WASHINGTON, INC., | |
| Defendant. | |

This matter comes before the Court on Plaintiff Weihan Wang's motion to remand, Dkt. No. 9, and Defendant UnitedHeathcare of Washington, Inc.'s motion to strike Dr. Wang's notice of supplemental authority, Dkt. No. 31. The Court grants both motions.

## I.    BACKGROUND

### A.    Facts of the Case

Dr. Wang, who is proceeding in this action pro se, is an optometrist who operates a solo practice in Renton, Washington. Dkt. No. 1-1 at 4. His patients include Medicare-eligible individuals who are covered under United Medicare plans. *Id.*

1    In May 2017, Dr. Wang entered into a Medical Group Participation Agreement (the

2   "Agreement") with United. *See* Dkt. No. 12-1. Under the Agreement, Dr. Wang and all other

3   physicians in his medical group agreed to "participate with [United] under one contract, one Tax

4   Identification Number (TIN) and one fee schedule(s)." *Id.* at 1. United agreed to pay for services

5   that Dr. Wang provided to United customers enrolled in certain benefit contracts, including

6   Medicare Advantage Benefit Contracts. *Id.* at 7–8, 15, 17. As discussed in greater detail below,

7   Medicare Advantage Benefit Contracts are "sponsored, issued or administered" by Medicare

8   Advantage Organizations ("MAOs") as part of the Medicare Advantage program under Part C (or

9   under Part C in concert with Part D) of Medicare. *Id.* at 17. Under the Agreement, Dr. Wang was

10  required to submit any claims he had for payment for services rendered to United "within 90 days

11  of the date of service." *Id.* at 7. The Agreement also specifies that "in the case of a billing dispute

12  that has been timely-made by [Dr. Wang], [United] shall render a decision within sixty days of

13  receipt of [Dr. Wang's] complaint," and "[a] complaint that has been rejected by [United] or any

14  dispute [United] ha[s] with [Dr. Wang] relating to the terms of this Agreement may be submitted

15  to nonbinding mediation." *Id.* at 44. "If the parties are unable to resolve a [d]ispute through

16  nonbinding mediation, and if either party wishes to pursue the [d]ispute, such party may commence

17  litigation proceedings"; provided, however, that "[i]n no event shall any litigation be commenced

18  more than one year after the date on which notice of the [d]ispute was given." *Id.* at 44–45.

19    The Agreement states that if Dr. Wang's services "are denied or otherwise not paid . . . due

20  to [his] failure to notify [United], to file a timely claim, to submit a complete claim, to respond to

21  [United's] request for information, or based on [United's] reimbursement policies and

22  methodologies, [Dr. Wang] may not charge our customer." *Id.* at 41.

23    On September 10, 2020, Dr. Wang rendered services to a patient who was enrolled in one

24  of United's benefit contracts. Dkt. No. 1-1 at 5. The patient's insurance card indicated that they

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 2

1    were insured under a Part C plan administered by United; however, their primary care provider

2    was an entity called Virginia Mason PCP (PCN) – CMG ("Virginia Mason"). Dkt. No. 23-1 at 2.

3    On November 18, 2020, Dr. Wang submitted a claim to United for the services rendered to the

4    Medicare patient. Dkt. No. 1-1 at 5. Two days later, United sent Dr. Wang a letter stating that

5    Virginia Mason, as opposed to United, was financially responsible for the claim based on other

6    "contractual agreements that exist." *Id.* at 5, 27. The letter stated that United forwarded Dr. Wang's

7    claim to Virginia Mason. *Id.* On May 16, 2023, having received no further communications or

8    payment from United or Virginia Mason, Dr. Wang notified United via email that the claim

9    remained unresolved and requested payment. *Id.* at 5. "After some discussion and negotiations,"

10   United notified Dr. Wang on June 2, 2023 that it was not willing to pay on the claim and would

11   not engage in mediation regarding the disputed payment because Dr. Wang did not initiate

12   mediation within a year after he received the November 20, 2020 letter. *Id.* at 23.

13        On June 5, 2023, Dr. Wang filed a pro se notice of small claims against United in King

14   County District Court, alleging breach of contract. *Id.* at 1. On September 12, 2023, United

15   removed Dr. Wang's action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 42 U.S.C.

16   § 405. Dkt. No. 1 at 1. In its notice of removal, United argues that this Court has jurisdiction

17   because Dr. Wang's claims "arise from" United's performance of its federal contract with the

18   Centers for Medicare & Medicaid Services ("CMS") to process Medicare claims under the

19   Medicare Act or are otherwise preempted by the Medicare Act. *Id.* at 2–4.

20        On September 17, 2023, Dr. Wang filed a motion to remand the case to small claims court.

21   Dkt. No. 9 at 2–11. Two days later, United filed a motion to dismiss. Dkt. No. 10 at 3–16. On

22   December 27, 2024, Wang filed a notice of supplemental authority directing the Court's attention

23   to certain manuals purportedly containing information about administrative appeal rights under the

24   Medicare regulations. Dkt. No. 30 at 2–3. On January 17, 2025, United moved to strike Wang's

1  notice of supplemental authority as untimely and because it advanced argument in violation of

2  Local Civil Rule 7(n). Dkt. No. 31 at 1–2. United also filed its own notice of supplemental

3  authority of "cases in this Circuit that post-date United's Motion to Dismiss and support the

4  principle that this Court has subject matter jurisdiction over this case, both because of 'arising

5  under' jurisdiction and federal officer jurisdiction." *Id.* at 1; *see also* Dkt. No. 32 (United's notice

6  of supplemental authority).

7  **B.    Medicare Advantage (Medicare Part C)**

8      In 1965, Congress passed the Medicare Act to create a federal health insurance program

9  primarily benefitting individuals 65 years of age and older. *See* 42 U.S.C. § 1395 *et. seq.* When it

10  was enacted, Medicare consisted of only two parts—Parts A and B (referred to as "traditional

11  Medicare")—under which the federal government paid health care providers directly for services

12  rendered to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395c–1395i-5 (Part A), 1395j–1395w-6

13  (Part B). Congress has since also authorized Part C (42 U.S.C. §§ 1395w-21–29), which created

14  the Medicare Advantage program, and Part D (42 U.S.C. §§ 1395w-101–154), which provides

15  prescription drug coverage for Medicare enrollees. Medicare is administered by CMS, an agency

16  within the U.S. Department of Health & Human Services.

17      As discussed above, this case concerns Part C. Under Part C, Medicare enrollees receive

18  Medicare through private organizations called MAOs. CMS enters into contracts with MAOs, *see*

19  42 U.S.C. § 1395w-27, and pays MAOs monthly fees in exchange for assuming the risk of

20  providing certain covered Medicare services to enrollees, *see* 42 U.S.C. § 1395w-23(a)(1)(A).

21  MAOs in turn select third-party health care providers to help them provide those services. *See* 42

22  U.S.C. § 1395w–22(d)(1) ("A [MAO] offering a [Part C] plan may select the providers from whom

23  the benefits under the plan are provided[.]"). MAOs generally enter into separate contracts with

24  these providers (called "contract providers"), and these contracts are subject to relatively few

restrictions. *See* 42 C.F.R. §§ 422.500–530. For instance, there are no restrictions regarding how much a contract provider is paid or how they are to be paid. *See generally id.* However, MAOs must pay for certain services rendered to plan enrollees even if the provider does not have a contract with the MAO (e.g., emergency medical services). *See* 42 U.S.C. § 1305w-22(d)(1)(E). If these services would have been covered under traditional Medicare, the MAO must pay these "noncontract providers" at minimum the Medicare-approved rate, which the noncontract provider must accept. *See* 42 U.S.C. §§ 1395w-22(a)(2)(A), (k)(1); 42 C.F.R. § 422.100 (b)(2); *see also Glob. Rescue Jets, LLC v. Kaiser Fdn. Health Plan, Inc.*, 30 F.4th 905, 910 (9th Cir. 2022).

Prior to 2006, CMS paid MAOs based on a specific capitation rate that CMS calculated for the MAO's geographical area. *See* 42 U.S.C. § 1395w–23(a)(1)(A)(i). Depending on the year, CMS calculated capitation rates based on the greatest of four values: (1) a "blended" aggregate capitation rate determined by both service area-specific and national Medicare costs; (2) a minimum monthly payment set by CMS; (3) a minimum percentage increase of two percent over the previous year's capitation rate; and (4) 100 percent of the value of adjusted average per capita cost (AAPCC) for medical services in an MAO's service area. *See* 42 U.S.C. § 1395w–23(c)(1); *see also Minn. ex. rel. Hatch v. United States*, 102 F. Supp. 2d 1115, 1118 (D. Minn. 2000); *Andersen v. Leavitt*, No. 03-6115 (DRH), 2007 WL 2874838, at *2 (E.D.N.Y. Sept. 27, 2007).

In 2006, that statutory payment framework changed. Instead of paying fixed monthly payments based on established capitation rates, CMS began paying MAOs based on bids submitted by MAOs in the prior year against federal benchmarks set for each MAO's service area. *See Andersen*, 2007 WL 2874838, at *4. The benchmarks represent the maximum amount that CMS would pay for services rendered in a service area under traditional Medicare. 42 U.S.C. § 1395w– 23(b); *see also Medicaid and Medicare Advantage Products Ass'n of Puerto Rico, Inc. v. Emanuelli Hernández*, 58 F.4th 5, 8 (1st Cir. 2023). MAOs then submit bids against that

benchmark. *See* 42 C.F.R. §§ 422.254(a), (b)(1). If the MAO's bid is less than the federal benchmark, CMS pays the MAO its bid plus a rebate, which must be returned to enrollees in the form of additional benefits or overage for services outside of traditional Medicare (e.g., dental benefits). 42 U.S.C. §§ 1395w–23(a)(1)(B)(i), (E); 1395w–24(b)(1)(C). If the MAO's bid is equal to or above the federal benchmark, the MAO will receive the benchmark amount, and each enrollee in that plan will incur an additional premium to cover the amount by which the bid exceeds the federal benchmark. 42 U.S.C. §§ 1395w–23(a)(1)(B)(ii), 1395w–24(b)(1)(A). In summary, payments to MAOs are "based on a comparison of each [MAO's] estimated cost of providing Medicare covered services (a bid) relative to the maximum amount the federal government will pay for providing those services in the plan's service area (a benchmark)." Patricia A. Davis et al., Cong. Research Serv., R40425, *Medicare Primer* at 22 (2020), https://fas.org/sgp/crs/misc/R40425.pdf.

An MAO's bid is the MAO's estimated cost to provide Medicare-covered services to Part C beneficiaries "with a national average risk profile." 42 C.F.R. § 422.254(b)(1). The bid incorporates not just costs of service, but also "administrative costs and return on investment." 42 C.F.R. § 422.254(b)(3). The bid amount must also "be based on plan assumptions about the amount of revenue required from enrollee cost-sharing," which "must reflect the requirement that the level of cost sharing Medicare Advantage plans charge to enrollees must be actuarially equivalent to the level of cost sharing (deductible, copayments, or coinsurance) charged to beneficiaries under the original Medicare fee-for-service program option." 42 C.F.R. § 422.254(b)(4).

The Medicare Act provides that a Medicare beneficiary who disputes an initial benefit determination "shall be entitled . . . to a hearing thereon by the Secretary [of Health and Human Services]" and "to judicial review of the Secretary's final decision after such as is provided in

section 405(g) of this title." 42 U.S.C. § 1395ff(b)(1)(A). Under Section 405(g), a beneficiary may seek judicial review "after any final decision of the [Secretary] made after a hearing to which he was a party" by filing a civil action in federal district court. 42 U.S.C. § 405(g). Section 405(g) is the sole avenue of judicial review for any claim "arising under" the Medicare Act. 42 U.S.C. § 405(h); *see also Heckler*, 466 U.S. at 614–15. This administrative appeals process applies to both enrollees and providers.

## II.    DISCUSSION

### A.    Legal Standard

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This determination is an "inflexible" threshold requirement that must be made "without exception, for jurisdiction is power to declare the law and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (cleaned up). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

### B.    Scope of the Record

The Court first addresses United's motion to strike Dr. Wang's Notice of Supplemental Authority. United argues that this Notice was untimely and improper under the Local Civil Rules of this District. Dkt. No. 31 at 1. Specifically, United avers that "the guidance [Dr. Wang] cites in his Notice has been publicly available for years," and "Dr. Wang improperly uses the Notice to advance argument." *Id.* at 2. Dr. Wang opposes United's motion to strike. Dkt. No. 33.[1]

---

[1] In his opposition brief, Dr. Wang requests that the Court strike United's Notice of Supplemental Authority. Dkt. No. 33 at 7. Because "requests for affirmative relief must be made in a motion, not in the response," *Sergeant v. Bank of*

Local Civil Rule 7(n) provides that "[b]efore the court rules on a pending motion, a party may bring to the court's attention relevant authority issued after the date the party's last brief was filed by serving and filing a Notice of Supplemental Authority that attaches the supplemental authority without argument." Dr. Wang's notice of supplemental authority consists of two manuals that were published after he filed his motion to remand. Dkt. Nos. 30-1–30-3. However, Dr. Wang acknowledges in his Notice that "the same guidance has been true on previous versions of the same authorities since at least 2020 or earlier." Dkt. No. 30 at 2. Renewed publication of the same guidance that was available to a litigant before the submission of the litigant's brief does not constitute authority that was first "issued after the date the party's last brief was filed." LCR 7(n). Accordingly, the Court grants United's motion to strike. As explained below, though, this does not mean that United ultimately prevails in this Court.

## C.     Dr. Wang's Claim Does Not "Arise Under" the Medicare Act

Dr. Wang contends that this case should be remanded to state court because it does not "arise under" the Medicare Act, and therefore this Court does not have jurisdiction over his action. Dkt. No. 9 at 5–11; *see also* Dkt. No. 24 at 2–8. United argues otherwise for various reasons. Dkt. No. 22 at 11–17.

Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Because United removed this case solely on the basis of federal question jurisdiction, this Court has jurisdiction only if Dr. Wang's claim "arises under" the Medicare Act. A claim "arises under" the Medicare Act in two circumstances: "(1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim

---

*Am., N.A.*, No. C17-5232-BHS, 2018 WL 1427345, at *1 n.2 (W.D. Wash. Mar. 22, 2018), the Court does not consider this request.

1   for Medicare benefits[.]" *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (2010) (quoting

2   *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984)).[2] Neither circumstance exists here.

3           First, Washington law provides the substantive basis for Dr. Wang's breach of contract

4   claim. Although United mischaracterizes that claim as broader than it really is, Dkt. No. 22 at 12–

5   14, it does not differ from the mine run state law contract claim. Specifically, Dr. Wang claims

6   that "[p]er the terms of [the Agreement,] [United] is to pay [him] a predefined rate for those

7   services, which is approximately $480." Dkt. No. 1-1 at 6. "[He] sent written notice of [his] dispute

8   in May of 2023 and more than 60 days have passed"; "[t]he claim has not been paid and dispute

9   resolution is exhausted, giving rise to the present litigation." *Id.* at 8. Contrary to United's

10  arguments, Dkt. No. 22 at 12–13, Dr. Wang's breach of contract claim is not that he was not

11  reimbursed quickly enough for the rendered services (thus implicating the Medicare Act's prompt

12  payment provisions)—it was that he was not reimbursed at all, *see* Dkt. No. 24 at 9. Thus, the

13  standing and substantive basis for the presentation of Dr. Wang's claim is not the Medicare Act.

14          Second, Dr. Wang's claim is not "inextricably intertwined" with a claim for Medicare

15  benefits. An action is only inextricably intertwined with the Medicare Act if it asserts a claim that

16  is "ultimately one for benefits" under the Act. *Do Sung Uhm*, 620 F.3d at 1141–42. Dr. Wang's

17  action is not seeking to recover benefits. At no point has United suggested that Dr. Wang provided

18  services to his Part C enrollee patient that were not covered by Medicare; instead, it simply

19  determined—"based on contractual agreements that exist between UnitedHealthcare and some

20  Medical Group/Hospital payers"—that Dr. Wang's claim was "the financial responsibility of"

21

22  ───────────────
    [2] United mentions the federal officer removal statute at the end of its reply brief in support of its motion to dismiss as
23  "another ground, and further support, for federal jurisdiction." Dkt. No. 25 at 13. However, United did not remove on
    this basis, *see* Dkt. No. 1, new arguments may not be raised in this fashion, *Thompson v. Comm'r*, 631 F.2d 642, 649
    (9th Cir. 1980), and any amendment of United's removal notice would have been untimely as of the date of its reply
24  brief, *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Mont.*, 213 F.3d 1108, 1117 (9th Cir.
    2000). The Court will therefore not consider 28 U.S.C. § 1442(a) as a basis for removal.

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 9

Virginia Mason. Dkt. No. 1-1 at 27; *see also id.* at 23. And outside of various mandatory provisions that are not at issue in this dispute, United's private contractual agreements—those between it and Dr. Wang and between it and Virginia Mason—are wholly collateral to the Part C contract between United and CMS. United's denial of Dr. Wang's claim was not based on its contractual obligations under the CMS contract or the Medicare Act, but instead was based on its position regarding who (United or Virginia Mason) should pay Dr. Wang under these collateral agreements. For those reasons, this dispute is not "'inextricably intertwined' with a claim for Medicare Benefits." *Do Sung Uhm*, 620 F.3d at 1141.

Further underscoring the purely contractual nature of this dispute is the Agreement's dispute resolution clause, Dkt. No. 12-1 at 44, which United acknowledges applies to this dispute. *See* Dkt. No. 1-1 at 23; Dkt. No. 10 at 10–12. The dispute resolution process expressly contemplates that there will be contractual disputes that are not subject to the administrative appeals process under Section 405(g). The Agreement also has an entire Payment Appendix for Medicare Advantage Benefit Contracts; unlike noncontract providers, who must accept standard Medicare prices, Dr. Wang and United negotiated their prices under the Agreement. *See* Dkt. No. 12-1 at 20–38 ("[T]he provisions of this Payment Appendix apply to services rendered by you to customers covered by all Medicare Advantage Benefit Contracts, as described in this agreement."). These negotiated terms serve as the basis for Dr. Wang's claim.

United's repeated arguments that Dr. Wang "takes issue with United . . . withdrawing coverage on a Medicare Advantage enrollee as well as making the enrollee 'improperly liable' for payment" misrepresent Dr. Wang's claim. Dkt. No. 22 at 17. What Dr. Wang actually alleges is that "*[e]ssentially*, [United] withdrew coverage on this patient by failing to respond in even a minimal way to this claim[.]" Dkt. No. 1-1 at 9 (emphasis added). This allegation is not that United *actually* withdrew coverage. Rather, as Dr. Wang explains, the issue is that he (and not United or

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 10

CMS) is effectively footing the bill for the patient's services: under the Agreement, "Wang, as a contracted provider, was to hold the enrollee harmless and look only to United for payment." Dkt. No. 9 at 4. There was no denial of coverage that would bring this dispute within the Medicare Act's ambit.[3]

Congress's modifications to Part C in 2006 do not change this result. Although United attempts to distinguish *RenCare, Ltd. v. Humana Health Plan*, 395 F.3d 555 (5th Cir. 2004) because it is "based on a [now-]outdated Medicare framework," Dkt. No. 22 at 15, *RenCare's* logic still holds here. Like this case, *RenCare* involved a payment dispute between an MAO (Humana) and a healthcare provider (RenCare). 395 F.3d at 556–57. Like this case, Humana and RenCare's relationship was governed by a written contract. *Id.* at 558. After Humana and RenCare "became embroiled in a dispute over reimbursement," RenCare sued Humana in Texas state court for breach of contract, among other state law claims. *Id.* at 557. Humana removed the case, asserting federal question jurisdiction under 28 U.S.C. § 1331, and RenCare moved to remand. *Id.* The district court denied the motion. *Id.* On appeal, the Fifth Circuit held that RenCare's claims did not arise under the Medicare Act because the claims were not "inextricably intertwined" with a claim for Medicare benefits; instead, "[a]t bottom, RenCare's claims [were] claims for payment pursuant to a contract between private parties." *Id.* at 557–59 (citing *Heckler*, 466 U.S. at 602); *see also Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 349–51 (5th Cir. 2024) ("Our

---

[3] United also briefly contends that adjudicating its delegation of financial responsibility for Dr. Wang's claim to Virginia Mason "will require consideration of whether United's delegation relationship with Virginia Mason complied with federal regulations," and therefore "arises under the Medicare Act." Dkt. No. 22 at 13–14 (citing 42 C.F.R. §§ 422.504(i)(3)(iii), 422.504(i)(4)(i)–(iv)). United cites no case that discusses whether a claim of improper delegation of payment responsibilities pursuant to the applicable regulations "arises under" the Medicare Act. In any event, Dr. Wang is not, as United appears to claim, challenging the permissibility of a contractual relationship between United and Virginia Mason. Dkt. No. 24 at 12 ("Dispute of United's 'delegation relationship' with 'Virginia Mason' . . . was not alleged in Wang's complaint."). Dr. Wang simply takes issue with United allegedly breaching its contract with *him*. Dkt. No. 1-1 at 6–7 ("No EOB [(Explanation of Benefits)] or PRA [(Provider Remittance Advice)"] was ever issued in this case, which is required by the [Agreement's] reconsideration/appeal process to dispute claims determinations. The determination letter U[nited] gave me disclaiming responsibility is not an EOB or PRA[.]").

court [in *RenCare*] repeatedly emphasized that '[t]he dispute [was] solely between Humana and RenCare' as it was 'based on [their] privately-agreed-to payment plan.'" (quoting *RenCare*, 395 F.3d at 558)).

United also argues that *RenCare* has "been repeatedly rejected by more recent decisions within the Ninth Circuit, as well as within the Fifth Circuit." Dkt. No. 22 at 15. That is not exactly right. Two of the cases United cites involve non-contracting providers, and a third is about Medicare preemption. *See Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F. Supp. 3d 1225, 1233 (C.D. Cal. 2016) (declining to extend *RenCare*'s holding to a case involving a non-contracting provider); *Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *4 n.3 (5th Cir. Mar. 20, 2023) (similar, noting that "[u]nlike here, the parties in *Rencare* had an express contractual agreement to provide services."); *Houston Methodist Hosp. v. Humana Ins. Co.*, 266 F. Supp. 3d 939, 951 (S.D. Tex. 2017) (finding that *RenCare* was not relevant to the Medicare preemption issue in the case).

The only case United cites that involves a claim by a contract provider has been criticized for being poorly reasoned. That case is *Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, No. CV 16-01097-BRO (JEMx), 2016 WL 6591768 (C.D. Cal. Nov. 4, 2016). There, the court relied on *SCAN Health* (a non-contract provider case) in declining to apply *RenCare* without grappling with *SCAN Health*'s observation that "the distinction between contracting and non-contracting providers . . . matters." *SCAN Health*, 210 F. Supp. 3d at 1233. And in any case, "[t]o accept *Prime Health Care Services*' conclusion would gut the Supreme Court's test for whether a claim arises under the Medicare Act" because "any claim for payment by an MAO provider—no matter how tangentially related to a benefits decision—would arise under the Act." *Liberty Dialysis-Hawaii LLC v. Kaiser Found. Health Plan, Inc.*, No. CV 17-00318 JMS-RLP, 2017 WL 4322385, at *5 (D. Haw. Sept. 28, 2017).

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 12

This Court follows the several others holding that where "a claim for payment may be determined entirely by reference to a private contract, and requires no analysis or application of the Medicare Act, policies, or regulations, no consideration of plan documents or benefits, and no redetermination of a benefits decision, it simply cannot be said to be 'inextricably intertwined' with a claim for Medicare benefits." *Id.*; *see also Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 511 F. Supp. 3d 1240, 1253 (M.D. Fla. 2021) ("In this action, the plaintiff sues the defendants for breach of the Provider Agreements. Thus, at its core, the plaintiff's claim arises from a private billing dispute and any dispute over payment is solely between the plaintiff and the defendants." (cleaned up)); *Baptist Hosp. of Miami, Inc. v. Humana Health Ins. Co. of Fla., Inc.*, No. 1:15-CV-22009-UU, 2015 WL 11237013, at *6 (S.D. Fla. Aug. 19, 2015) ("This action is like that in *RenCare*, where an MAO and a contracted provider have entered into a contract and resolution of Plaintiffs' breach of contract claim requires no reference to federal law."). Dr. Wang's injuries "are 'collateral to any claim for benefits,' and can therefore "be proved 'without regard to any provisions of the [Medicare] Act relating to provision of benefits.'" *Glob. Rescue Jets*, 30 F.4th at 918–19 (quoting *Do Sung Uhm*, 620 F.3d at 1145).

Also relevant here is the additional holding in *RenCare* that "the administrative review process attendant to Part C [i.e., Medicare Advantage] does not extend to claims in which an enrollee has absolutely no interest." *RenCare*, 395 F.3d at 559. Specifically:

> As is evident from the regulations, the administrative review process focuses on enrollees, not health care providers, and is designed to protect enrollees' rights to Medicare benefits. . . . Humana's failure to pay RenCare is not an organization determination subject to the mandatory exhaustion of administrative remedies. No enrollee has requested an organization determination or appeal. No enrollee has been denied covered service or been required to pay for a service. Rather, the [Medicare Advantage] enrollees in this case bear no financial risk inasmuch as they have already received the services for which RenCare seeks reimbursement. In fact, there is a complete absence of [Medicare Advantage] beneficiary interest in this dispute. The only interest at issue is RenCare's interest in receiving payment under its contract with Humana.

1

2   *Id.* at 559–60. As discussed above, Dr. Wang is prohibited from seeking additional payments from

3   the enrollee if he loses this case. Dkt. No. 12-1 at 7, 39–41, 49–50. And if United loses, it is

4   prohibited from recouping any costs from enrollees. *See* 42 C.F.R. § 422.504(g)(1). Thus, "there

5   is a complete absence" of enrollee interest in this dispute; the only dispute is between Dr. Wang

6   and United over their negotiated contract. *RenCare*, 395 F.3d at 560; *see also Caris MPI*, 108 F.4th

7   at 350 ("United fails to show how a billing dispute between an MAO and provider for past services

8   rendered has a direct impact on enrollees"); *Ohio State Chiropractic Ass'n v. Humana Health Plan*

9   *Inc.*, 647 F. App'x 619, 625 (6th Cir. 2016) ("At its core, [plaintiff]'s claim arises from a private

10  billing dispute. No beneficiary was denied Medicare benefits or reimbursement. Nor do the parties

11  contest whether Medicare covers the chiropractic services that [plaintiff] provided—they agree

12  that it does. Any dispute over payment is solely between [plaintiff] and Humana.").

13          Furthermore, United has not established that a decision regarding whether the Agreement

14  requires payment of Dr. Wang's $480 claim will "affect the estimated medical expenses for the

15  following year," which in turn will "affect the government's savings and the enrollee's premiums

16  and benefits received." *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d

17  1388, 1392 (S.D. Fla. 2014).[4] But even if United could establish such effect, it would not transform

18  this dispute into one that (1) "at bottom" seeks to recover benefits, *Do Sung Uhm*, 620 F.3d at

19  1142–43, or (2) otherwise raises a "contested and substantial" federal issue that a federal forum

20  may entertain "consistent with congressional judgment about the sound division of labor between

21  state and federal courts governing the application of § 1331," *Grable & Sons Metal Prods., Inc. v.*

22  *Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005). "Congress created Medicare Advantage in the

23  _____

24  [4] *But see Main & Assocs., Inc. v. Blue Cross & Blue Shield of Ala.*, 776 F. Supp. 2d 1270, 1279–81 (M.D. Ala. 2011)
    ("[B]ecause this action concerns only Medicare benefits under Part C, no government funds are at risk whatever the
    outcome of the litigation may be.").

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 14

hope that the private sector would make delivering Medicare benefits cheaper and more efficient."

*Ohio State Chiropractic Ass'n*, 647 F. App'x at 623. "Enforceable, predictable contracts between

providers and Medicare Advantage organizations foster that purpose." *Sarasota Cnty. Pub. Hosp.*

*Bd.*, 511 F. Supp. 3d at 1254. In contrast, holding that a private contract dispute is "at bottom" a

claim for benefits such that a provider asserting a claim under the contract must administratively

exhaust his claim "is a 'far cry' from that purpose." *Id.* As CMS explained in response to a payment

dispute between a contracted provider and an MAO:

> [Medicare Advantage] regulations clearly limit [CMS]'s ability to intervene in payment disputes between [Medicare Advantage] organizations and their contracted [Medicare Advantage] providers. [T]he existence of provider contracts that can be enforced by the courts is why the Congress limited [CMS]'s regulatory authority in comparison to those afforded non-contracted providers.

*Christus Health Gulf Coast v. Aetna, Inc.*, 237 S.W.3d 338, 340–41 (Tex. 2007) (*quoting* Letter

from Acting Director of the CMS Medicare Managed Care Group (Mar. 30, 2001)); *see also*

*Sarasota Cnty. Pub. Hosp. Bd.*, 511 F. Supp. 3d at 1253 (same); CMS, Pub. No. 100-16, *Medicare*

*Managed Care Manual*, ch. 13, § 50.1 p. 58 (2022),

http://web.archive.org/web/20230607053536/https://www.cms.gov/medicare/appeals-and-

grievances/mmcag/downloads/parts-c-and-d-enrollee-grievances-organization-coverage-

determinations-and-appeals-guidance.pdf ("Contract providers (including subcontracted entities)

do not have appeal rights under the provisions discussed in this guidance. Contract provider

disputes involving plan payment denials are governed by the appeals/dispute resolution provisions

in the contract between the provider and the plan."). As in *Sarasota County*, Dr. Wang's claim

"neither 'interfere[s] with national uniform plan administration" nor undermine[s] Congress's

purpose in enacting [Medicare Advantage]." *Sarasota Cnty. Pub. Hosp. Bd.*, 511 F. Supp. 3d at

1254; *see also MSO of Puerto Rico, LLC v. Med Scan, PSC*, No. CV 3:18-01683-WGY, 2019 WL

2869173, at *7–9 (D.P.R. July 2, 2019) (finding that there was no substantial federal issue or

colorable federal question where "there [wa]s nothing before the Court to suggest that the resolution of this dispute will have a broad impact on any other cases," "the resolution of th[e] action d[id] not challenge the propriety of any action taken by the government," "neither the government nor any Medicare beneficiaries [we]re parties to th[e] action," "the Court ha[d] nothing before it to suggest that there [wa]s any potential direct governmental or beneficiary liability under Medicare," and "th[e] action [wa]s a garden-variety state-law breach of contract and tort claim between private parties").

In sum, Dr. Wang's action does not "arise under" the Medicare Act.

**D.    Dr. Wang is Not Entitled to Attorney's Fees**

Lastly, Dr. Wang seeks fees and costs associated with United's removal and motion to dismiss. *See* Dkt. No. 9 at 12–13; Dkt. No. 21 at 19; Dkt. No. 24 at 14–20. Courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Even assuming without deciding that pro se plaintiffs may be awarded attorney fees under § 1447(c), such an award is not warranted here. Given that this is a case of first impression, United had an objectively reasonable basis for removing this case based on federal question jurisdiction. Therefore, the Court declines to award Dr. Wang costs and fees associated with removal.

### III.    CONCLUSION

For the reasons set forth above, the Court GRANTS Dr. Wang's motion to remand this case back to King County District Court. Dkt. No. 9. United's motion to dismiss is DENIED as moot. Dkt. No. 10. The Court further ORDERS that:

1.    Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the King County District Court in the State of Washington;

2.    The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO STRIKE - 16

Court for the King County District Court;

3.    The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the King County District Court; and

4.    The Clerk of the Court shall CLOSE this case.


Dated this 24th day of February, 2025.

Lauren King
United States District Judge